# 16-3945-cv(L),
## 17-1625 (CON), 17-1722 (CON)

# United States Court of Appeals
## for the
# Second Circuit

VIRGINIA L. GIUFFRE,

*Plaintiff-Appellee,*

– v. –

GHISLAINE MAXWELL,

*Defendant,*

– v. –

SHARON CHURCHER, JEFFREY EPSTEIN,

*Respondents,*

ALAN M. DERSHOWITZ, MICHAEL CERNOVICH, dba CERNOVICH MEDIA,

*Intervenors-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR INTERVENOR-APPELLANT
## ALAN M. DERSHOWITZ
## [REDACTED]

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Intervenor-Appellant
Alan M. Dershowitz*

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ....................................................................iii-vi

PRELIMINARY STATEMENT ...................................................................1

JURISDICTIONAL STATEMENT ...............................................................7

ISSUES PRESENTED FOR REVIEW ..........................................................8

STATEMENT OF THE CASE....................................................................9

    I.     VIRGINIA GIUFFRE'S ALLEGED RELATIONSHIP WITH
          JEFFREY EPSTEIN AND BELATED ACCUSATIONS AGAINST
          DERSHOWITZ ...............................................................................9

    II.    GIUFFRE AND HER ATTORNEYS' CONTINUING INSISTENCE
          ON, AND REPETITION OF, ACCUSATIONS AGAINST
          DERSHOWITZ ...............................................................................12

    III.   VIRGINIA GIUFFRE SUES GHISLAINE MAXWELL FOR
          DEFAMATION; THE DISTRICT COURT ALLOWS THE
          PARTIES TO CONDUCT THE LITIGATION LIKE A
          CONFIDENTIAL PRIVATE ARBITRATION ................................13

    IV.   ████████████████████████████████████

    V.    THE DISTRICT COURT BRUSHES OFF ATTEMPTS TO
          UNSEAL JUDICIAL DOCUMENTS .................................................21

SUMMARY OF ARGUMENT ...................................................................23

ARGUMENT .........................................................................................25

    I.     LEGAL STANDARDS...................................................................25

          A.    Standards of Review ......................................................25

          B.    Applicable Legal Standards ...........................................26

i

1.    Sealing of Judicial Documents ...................................26

        a.   The Common Law Test ...............................27

        b.   The First Amendment Test...........................28

2.    Modification of a Protective Order...............................29

II.    BOTH THE FIRST AMENDMENT AND COMMON LAW
       REQUIRE THAT THE PUBLIC BE PERMITTED TO ACCESS
       ███████████████████████████████████...............30

   A.   The Summary Judgment Record, Including the ████████
        ██████████, Comprises "Judicial Documents" to Which a
        Strong Presumption of Access Attaches ...................30

        1.    The District Court Applied the Wrong Standard............31

        2.    The District Court Based Its Ruling on Dicta That This
              Court Has Expressly Repudiated....................32

   B.   The District Court Also Erred in Denying Dershowitz's Initial
        Motion to Unseal the ████████████████████████████
        ████...................................................34

        1.    The ██████████████████████████████████
              Were Judicial Documents Even Prior to Summary
              Judgment........................................34

        2.    The Public Has a Common Law Right to Access the
              █████████████████████████████████..........37

        3.    The First Amendment Guarantees Access to the
              █████████████████████████████████..........40

III.   THERE ARE NO COUNTERVAILING FACTORS SUFFICIENT
       TO JUSTIFY CONTINUED SEALING ...........................42

IV.    ALTERNATIVELY, THE PROTECTIVE ORDER SHOULD BE
       MODIFIED TO PERMIT DISCLOSURE OF THE
       █████████████████████████████████████████..49

CONCLUSION......................................................55

ii

<u>TABLE OF AUTHORITIES</u>

<u>PAGE NO(s).</u>

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
    No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ..................35

*Anderson v. Cryovas, Inc.*,
    805 F.2d 1 (1st Cir. 1986)...................................................................... 36, 37

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016) ..........................................................................26

*Bond v. Utreras*,
    585 F.3d 1061 (7th Cir. 2009) .....................................................................36

*Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*,
    263 F.3d 1304 (11th Cir. 2001) ..................................................................36

*Cox v. Onondaga Cnty. Sheriff's Dep't*,
    760 F.3d 139 (2d Cir. 2014) ................................................................ 24, 31

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10 Civ. 8086, 2012 WL 6217646 (S.D.N.Y. Dec. 3, 2012) ..................35

*Doe v. United States*,
    No. 08 Civ. 80736 (S.D. Fla.)........................................................................42

*Gambale v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004) ........................................................................50

*Giuffre v. Maxwell*,
    165 F. Supp. 3d 147 (S.D.N.Y. 2016) ................................................... 13, 15

*Gucci Am., Inc. v. Guess?, Inc.*,
    No. 09 Civ. 4373, 2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010) ..................35

*In re EPDM Antitrust Litig.*,
    255 F.R.D. 308 (D. Conn. 2009) ...............................................................30

*In re Gushlak*,
    No. 11-MC-0218, 2012 WL 3683514 (E.D.N.Y. July 27, 2012) .......... 35, 40

*In re N.Y. Times Co.*,
    828 F.2d 110 (2d Cir. 1987) ................................................................. 37, 39

*In re Omnicom Grp., Inc. Secs. Litig.*,
    No. 02 Civ. 4483, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006).......... 35, 40

*In re Sept. 11 Litig.*,
    262 F.R.D. 274 (S.D.N.Y. 2009) ................................................................. 30

*Jane Doe #1 v. United States of America*,
    No. 08 Civ. 80736 (S.D. Fla.) ..................................................................... 10

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. 2013) ......................................................... 49

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982) ......................................................... 31, 32, 33

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ..................................................................... 36

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013) ........................................................................ 26

*Lenart v. Coach Inc.*,
    131 F. Supp. 3d 61 (S.D.N.Y. 2015) .......................................................... 40

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
    998 F.2d 157 (3d Cir. 1993) .................................................................. 34, 36

*Long Island Lighting Co. v. Barbash*,
    779 F.2d 793 (2d Cir. 1985) ........................................................................ 39

*Louissier v. Universal Music Grp., Inc.*,
    214 F.R.D. 174 (S.D.N.Y. 2003) ................................................................. 51

*Lown v. Salvation Army, Inc.*,
    No. 04 Civ. 01562, 2012 WL 4888534 (S.D.N.Y. Oct. 12, 2012) ............... 32

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) .............................................................. *passim*

*Martindell v. Int'l Tel. & Tel. Corp.*,
    594 F.2d 291 (2d Cir. 1979) .................................................................. 31, 32

*Mills v. Alabama*,
    384 U.S. 214 (1966)......................................................................................26

*Mokhiber v. Davis*,
    537 A.2d 1100 (D.C. 1988) ................................................. *passim*

*Murphy v. DirecTV*,
    724 F.3d 1218 (9th Cir. 2013) ......................................................48

*Newsday LLC v. Cnty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ............................................ 27, 38, 45

*Phillips v. Gen. Motors*,
    307 F.3d 1206 (9th Cir. 2002) ......................................................36

*Press Enter. Co. v. Super. Ct. of Cal.*,
    464 U.S. 501 (1984)......................................................................43

*Republic of the Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ........................................................33

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980).......................................................................1

*Rosado v. Bridgeport Roman Catholic Diocesan Corp.*,
    970 A.2d 656 (Conn. 2009) ............................................. 34, 37, 49

*Royal Park Investments SA/NV v. Deutsch Bank Nat'l Trust Co.*,
    No. 14 Civ. 04394, 2016 WL 7188795 (S.D.N.Y. Dec. 7, 2016) ................35

*S.E.C. v. Oakford Corp.*,
    No. 00 Civ. 2426, 2001 WL 266996 (S.D.N.Y. Mar. 16, 2001)...................36

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001) .................................................. *passim*

*Schiller v. City of N.Y.*,
    No. 04 Civ. 7922, 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ...............35

*Skyline Steel, LLC v. PilePro, LLC*,
    No. 13 Civ. 8171, 2015 WL 556545 (S.D.N.Y. Feb. 9, 2015) ....................40

*Tradewinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901, 2016 WL 3951181 (S.D.N.Y. July 20, 2016).......... 52, 53

*United States v. Amodeo ("Amodeo II"),*
    71 F.3d 1044 (2d Cir. 1995) ................................................................ *passim*

*United States v. Amodeo (Amodeo I),*
    44 F.3d 141 (2d Cir. 1995) ................................................... 26, 27

*United States v. Bryan,*
    339 U.S. 323 (1950) ................................................................ 38

*United States v. Cojab,*
    996 F.2d 1404 (2d Cir. 1993) ...................................................... 42

*United States v. Corbitt,*
    879 F.2d 224 (7th Cir. 1989) ...................................................... 36

*United States v. Erie Cnty.,*
    763 F.3d 235 (2d Cir. 2014) ...................................... 23, 28, 41, 42

*United States v. Graham,*
    257 F.3d 143 (2d Cir. 2001) ...................................................... 28

*United States v. HSBC Bank USA, N.A.,*
    863 F.3d 125 (2d Cir. 2017) ....................................................... 7

*United States v. Martoma,*
    No. S1 12 Cr. 973, 2014 WL 164181 (S.D.N.Y. Jan. 9, 2014) ..................... 47

*United States v. Sattar,*
    471 F. Supp. 2d 380 (S.D.N.Y. 2006) ............................................. 34

*Vazquez v. City of N.Y.,*
    No. 10 Civ. 6277, 2014 WL 11510954 (S.D.N.Y. May 2, 2014) ................ 50

*Westmoreland v. CBS, Inc.,*
    752 F.2d 16 (2d Cir. 1984) ....................................................... 26

## Rules and Regulations

28 U.S.C. § 1332(a) ..................................................................... 7

Fed. R. Civ. P. 26 ...................................................................... 54

Fed. R. Civ. P. 45(g) ................................................................... 38

vi

## PRELIMINARY STATEMENT

This is a case about secrecy run amok—and about the selective use of court-mandated confidentiality to publicly destroy the reputation of an innocent man, while keeping evidence of his innocence shrouded from public view. Deferring to the parties' demands for nearly limitless confidentiality, the district court oversaw this action like a private confidential dispute resolution service, permitting thousands of pages of judicial documents—including dozens of motions and briefs, nearly the entire record on summary judgment, and even several of the court's own opinions—to be sealed by judicial order. It did this by all but ignoring the constitutional and common-law presumption of openness that attaches to such documents, and by failing to engage in the careful balancing that the law demands. Such secrecy violates the First Amendment and this Court's precedent. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

At age 79, Alan M. Dershowitz has seen his reputation tainted by false and grotesque allegations of pedophilia and rape peddled to the press by plaintiff Virginia Giuffre, a woman who has made bizarre and false claims against current

1

and former public officials and other prominent people.[1]  Dershowitz has done

everything in his power to combat this assault on his reputation, from swearing to

his innocence under oath, to marshaling every bit of documentation within his

control to demonstrate that the allegations cannot be true, to submitting to a full

investigation of the charges by former federal judge and FBI Director Louis Freeh,

who exonerated him.  And still the stories keep coming.

In 2015, Virginia Giuffre filed the instant action against Ghislaine

Maxwell, asserting a single count of libel.  The gravamen of the complaint was that

Maxwell had lied about Giuffre in order to cover up Maxwell's alleged

involvement with financier Jeffrey Epstein in trafficking Giuffre and others for

sex.  Dershowitz, a criminal lawyer who had represented Epstein years before in a

criminal case involving sex trafficking allegations, was named as a potential

witness.  In that capacity, he reviewed certain documents in preparation for

possible testimony; █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[1] For example, Ms. Giuffre has made bizarre and incredible claims about supposed encounters with Bill Clinton, Al Gore, and others that are belied by documentary evidence and common sense.  *See, e.g.*, J.A.-1355-56 ¶¶ 53-56.

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

     There was just one problem: the documents in question had been

designated by the parties as "confidential" under the district court's stipulated

Protective Order, and had been filed with the court under seal. Determined to

expose the documents as further proof that Giuffre had fabricated her story about

him, Dershowitz moved to intervene in the litigation for the limited purpose of

unsealing the ███████████████████████████.

     Unsealing of these three documents should have been a

straightforward affair. Having been filed in court and utilized to render judicial

rulings, all three are "judicial documents" to which a presumption of public access

applies. ██████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████ In his briefing to the district court, Dershowitz argued that

Giuffre's efforts to gain publicity ████████ based on her allegations

forfeited her asserted right to maintain the confidentiality of these documents.

Dershowitz also sought an alternative form of relief: in the event the district court

declined to unseal the ████████████████████████ under the

presumption of access, Dershowitz asked that the district court's blanket stipulated

Protective Order be modified to exclude these documents from its scope.

      The district court denied Dershowitz's motion to unseal or, in the

alternative, to modify the protective order. ████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

███████████████████████████████

███████████

      Although incorrect, the district court's decision should have been

rendered academic in short order.  Less than two months after the district court

denied Dershowitz's motion, Maxwell moved for summary judgment on Giuffre's

defamation claim.  The parties filed dozens of documents in connection with the

summary judgment motion (the "Summary Judgment Record"), including the

████████████████████.  Non-party Michael Cernovich then intervened and

moved to unseal the Summary Judgment Record.  Because the ████████████

████████ were part of that record, Dershowitz joined Cernovich's motion.

Faced with this new motion, the district court got it wrong again. Rather than faithfully apply this Court's public-access jurisprudence, the district court simply ignored the fact that Cernovich and Dershowitz had moved to *unseal* summary judgment filings—a motion carrying with it a strong presumption of public access—and instead treated the motion as one "to *modify* the Protective Order"—a standard more difficult for the intervenors to satisfy. Sp.A.-28 (emphasis added). In fact, no such "motion to modify" had been made, either by Cernovich or by Dershowitz. Nonetheless, the district court addressed the "motion" that it had wrongly identified—and denied it. Sp.A.-36.

Decades of authority from the Supreme Court and this Court make clear that a decision to seal nearly the entire summary judgment record because members of the public failed to show "a compelling need" for access, *see id.*, is legally indefensible. Even under the newfangled balancing test the district court purported to apply to the Cernovich/Dershowitz motion, unsealing should have been granted. This Court's case law, under both the First Amendment and the common-law right of access to judicial documents, is clear: the public has the right to monitor the courts. Accordingly, access to the ███████████████████ ██████████ and the full Summary Judgment Record as "judicial documents" should have been granted.

Sealing and secrecy for their own sake are forbidden—and in this case, secrecy would permit a serious wrong to go un-remedied. Dershowitz had no

5

connection to Giuffre until late 2014, when she and her lawyers issued a knowingly false, career-upending accusation against him in a court filing—one they deliberately made public even though it could have been filed under seal.  At the time the accusation was made in public, the documents Dershowitz seeks to unseal in this appeal already existed—and they already showed that Giuffre was framing him for a crime he did not commit, entirely for financial gain.  The documents show that ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████.  But while Giuffre's accusations were made in public, the contradictory documentary evidence remains hidden from the public to this day, by order of the district court—even though Ms. Giuffre has waived any possible claim of confidentiality by widely circulating her ████████ ████████████████████████

The end result of this selective sealing is that there remains on the public record a devastating false accusation, while critical evidence confirming that it is false—and the result of a frame-up plot—remains sealed.  Under the district court's orders, Dershowitz is precluded from exercising his constitutional rights to defend himself by sharing or even describing documentary evidence to refute a knowingly false accusation.  This unconscionable and unlawful result must not be allowed to stand.

This Court should reverse.

6

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over the underlying action pursuant to 28 U.S.C. § 1332(a). On November 3, 2016, the district court (Sweet, J.) entered an Order granting Dershowitz's motion for permissive intervention and denying his motion to unseal the Memoir-Related Documents and the Reply Brief. Dershowitz filed a timely notice of appeal on November 23, 2016. On April 18, 2017, this Court so-ordered a stipulation pursuant to Local Rule 42.1 withdrawing that appeal without prejudice to reinstatement by July 28, 2017.

On May 3, 2017, the district court entered an Order denying the motion to unseal the Summary Judgment Record. Dershowitz filed a second timely notice of appeal on May 19, 2017, this one appealing the denial of unsealing of the Summary Judgment Record.

On July 18, 2017, this Court reinstated Dershowitz's first appeal and consolidated the two appeals for briefing.

This Court has appellate jurisdiction over Dershowitz's appeals pursuant to the collateral order doctrine. *See United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 133-34 (2d Cir. 2017).

## ISSUES PRESENTED FOR REVIEW

The issues presented for review in these appeals are:

1.      Did the district court commit reversible error in denying the motion to unseal the ███████████████████ as part of the Summary Judgment Record?

2.      As a question of first impression in this Circuit, does the presumption of public access to court proceedings and records under the First Amendment and/or federal common law apply to documents filed in connection with discovery motions, such as the ███████████████████████ ████

3.      Did the district court commit reversible error in denying Dershowitz's motion to unseal the ███████████████████████ ████ on the basis that, having been filed in connection with discovery motions, they were not judicial documents entitled to a presumption of public access?

4.      In the alternative, did the district court commit reversible error in denying Dershowitz's motion to modify the Protective Order to exclude the ████████████████████████████ from its scope?

## STATEMENT OF THE CASE

I.  **VIRGINIA GIUFFRE'S ALLEGED RELATIONSHIP WITH
    JEFFREY EPSTEIN AND BELATED ACCUSATIONS AGAINST
    DERSHOWITZ**

In 2006, Dershowitz was retained by financier Jeffrey Epstein to join

a team of lawyers hired to defend Epstein against accusations that he had solicited

sex workers and had inappropriate sexual encounters with underage girls.[2]

J.A.-656  ¶¶ 6-7.  In 2008, Epstein pleaded guilty to certain offenses.  J.A.-384 ¶ 2.

Virginia Giuffre, who is the plaintiff in this case, has alleged that she was one of

Epstein's victims (Epstein was neither charged nor convicted of any conduct

toward her).  J.A.-656-57 ¶ 8.  Giuffre claims that she was held as a "sex slave"

and trafficked by Epstein, who she alleges facilitated sexual encounters between

her and a number of men.  *Id.*

In the period from 2006 through 2014, Virginia Giuffre submitted to

interviews with law enforcement, told her story to the media, drafted a tell-all

memoir, circulated that draft widely in an effort to seek publication of her story,

and filed a lawsuit alleging that Mr. Epstein had trafficked her to many of his

prominent associates.  JA.-657-59 ¶¶ 10-14.  During this period, Giuffre never

once claimed to have had any sexual contact with Dershowitz, much less that he

---

[2] Dershowitz had been acquainted with Mr. Epstein through academic events for a number of years prior to his retention as Mr. Epstein's counsel, but had neither witnessed nor heard about allegations of sexual misconduct by Mr. Epstein before being hired to represent him. J.A.-656 ¶ 6.

9

had sexually abused her.  J.A.-658 ¶ 11.  Then, in December 2014, Giuffre—

represented by attorneys Bradley Edwards and Paul Cassell—filed a motion to join

an that had been initially filed in the United States District Court for the Southern

District of Florida in 2008 by another of Mr. Epstein's alleged victims, who was

designated as "Jane Doe."  *Jane Doe #1 v. United States of America*, No. 08 Civ.

80736 (S.D. Fla.) (the "CVRA Action") ; J.A.- 659 ¶ 16.

       In late 2014 and early 2015, Giuffre's lawyers alleged in the CVRA

Action that Dershowitz had had sex with Giuffre on numerous occasions while she

was a minor, including in Florida, on Mr. Epstein's private planes, in the British

Virgin Islands, in New Mexico, and in New York.  J.A.-659-60 ¶ 17.  Unlike much

of the record in the CVRA Action, these allegations were not sealed; instead, *they*

*were filed publicly*—without any evidence to support them and without affording

Dershowitz an opportunity to dispute them.  *Id.*  Although Giuffre elaborated upon

these false allegations in subsequent filings, the presiding judge in the CRVA

Action ultimately struck them from the record as a sanction against the lawyers

who had filed them.  But the damage to Dershowitz's reputation by these false

allegations had been done—and it would persist.  J.A.-660 ¶¶ 18-19.

       In the wake of the grotesque allegation that he is a pedophile and a sex

criminal, Dershowitz defended himself publicly in media interviews.  In January

2015, Giuffre's attorneys, Mr. Edwards and Mr. Cassell, sued Dershowitz in

Florida for defamation, citing comments he made in his own defense.  J.A.-661 ¶

10

21. 

The Florida defamation action settled in April 2016.[3]  As part of the settlement, the parties released a joint statement in which attorneys Cassell and Edwards admitted that it had been a mistake to accuse Dershowitz of sexual misconduct in their filings in the CVRA Action, and withdrew those filings. J.A. -662 ¶ 24; J.A.-330.  Also in April 2016, Dershowitz released the results of a thorough investigation led by former FBI Director and federal judge Louis Freeh, which found that "the totality of the evidence"[4] "refutes the allegations made against" Dershowitz by Giuffre.  *Id.* ¶ 25; J.A.-334.

---

[3] Because the Florida action has settled, Dershowitz cannot now raise Giuffre's discovery violations or seek disclosure of the documents sought here from the Florida court.

[4] Dershowitz provided indisputable contemporaneous documentary evidence—including cell phone and credit card records and dates of court and television appearances—that proved he could not have been, and was not, in locations where Giuffre claimed to have met him during the relevant period.

11

## II.   GIUFFRE AND HER ATTORNEYS' CONTINUING INSISTENCE ON, AND REPETITION OF, ACCUSATIONS AGAINST DERSHOWITZ

Despite the settlement of the defamation case and the resulting joint statement, the court order striking the "lurid" allegations against Dershowitz in the CVRA Action, and the results of Judge Freeh's investigation, since April 2016, Virginia Giuffre and her counsel have republished Giuffre's allegations against Dershowitz in various fora.  J.A.-663 ¶ 26.  For example, on April 8, 2016, just after the settlement of the Florida defamation case, Mr. Cassell and Mr. Edwards made a court filing that stated that Giuffre "reaffirms" her allegations against Dershowitz, and that their mistake in filing those allegations in the CVRA Action was merely "tactical."  *Id.*  ¶ 26; J.A.-340.  David Boies, one of Giuffre's attorneys in this case, was described as saying publicly that Giuffre "stands by her allegations" against Dershowitz.[5]  These statements—which falsely imply that Dershowitz is guilty of sexual misconduct—are highly injurious to his reputation, especially when they come from otherwise-credible lawyers.  J.A.-663 ¶ 26.

The false allegation that Alan Dershowitz engaged in sexual misconduct with Virginia Giuffre has also continued to receive attention in the press.  *See id.* ¶ 27; J.A.-342-81.  Dershowitz learned that Giuffre sat for an interview with ABC News, presumably as part of her efforts to increase public

---

[5] *See* Casey Sullivan, *Alan Dershowitz Extends Truce Offer to David Boies Amid Bitter Feud*, BLOOMBERG LAW (Apr. 11, 2016), https://bol.bna.com/alan-dershowitz-extends-truce-offer-to-david-boies-amid-bitter-feud/.

interest in (and the commercial value of) her "story." *Id.* ¶ 27. The interview was announced on social media by an organization with which Mr. Edwards is associated and was said to be slated to appear on ABC's Good Morning America, World News Tonight, and Nightline programs. *Id.* While the ABC News interview has not yet run, there is no assurance that it will not run in the future. *Id.*

## III. VIRGINIA GIUFFRE SUES GHISLAINE MAXWELL FOR DEFAMATION; THE DISTRICT COURT ALLOWS THE PARTIES TO CONDUCT THE LITIGATION LIKE A CONFIDENTIAL PRIVATE ARBITRATION

In September 2015, Giuffre sued Ghislaine Maxwell, alleging that Ms. Maxwell defamed her by falsely calling Giuffre a liar in published statements. After a motion to dismiss was denied on February 29, 2016, *see Giuffre v. Maxwell*, 165 F. Supp. 3d 147 (S.D.N.Y. 2016), discovery began in earnest.

On March 18, 2016, the district court entered a blanket protective order which had been negotiated and stipulated to by the parties (the "Protective Order"). The Protective Order permitted the parties to designate as confidential "information that is confidential and implicates common law and statutory privacy interests," J.A.-125 ¶ 3, and required any party seeking to file with the court material designated as confidential to do so under seal, J.A.-127 ¶ 10.

In the less than five months between March 18, 2016 and August 9, 2016, the parties sought permission to file documents under seal more than twenty times, and the district court granted each application as a matter of course. Then, on August 9, 2016, the district court entered what it termed a "standing order,"

which provided that "filing a letter motion seeking sealing . . . is no longer necessary. A party wishing to challenge the sealing of any particular submission may do so by motion." J.A.-196. The district court's only reasoning in issuing this sweeping order was "[t]o reduce unnecessary filings and delay," *id.*; it did not address this Court's requirement that such an order "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim," *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006).

Overall, more than fifty separate filings in this action were permitted to be submitted under seal, including dozens of motions and briefs, several court orders and hearing transcripts, nearly the entire Summary Judgment Record, and the entire joint pretrial order except for the caption and trial counsel's contact information. Pursuant to this capacious sealing practice, nearly fifty pages of the district court's summary judgment decision were redacted from the publicly-filed version, rendering it impossible for the public to gain any meaningful sense of what the litigation was about or how the district court was performing its judicial function. The district court's secretive management of this case even prompted counsel for the *New York Post* and the *New York Daily News* to write a letter to Judge Sweet on May 4, 2017 observing that "confidentiality practices in this case to date raise concerns that the parties may seek to try some or all of this case behind closed doors" and noting that "a significant portion of the parties' filings

14

with the Court (and the Court's rulings) thus far have been kept secret and sealed,

despite the presumption of open access to judicial proceedings under the First

Amendment and common law." J.A.-648.



As Dershowitz immediately realized,

all corroborate Dershowitz's assertions that he never in

engaged in sexual misconduct of any sort, and that there was no sexual contact of

any kind between him and Virginia Giuffre. These documents, which include













## V. THE DISTRICT COURT BRUSHES OFF ATTEMPTS TO UNSEAL JUDICIAL DOCUMENTS

Dershowitz filed his initial motion to unseal the Memoir-Related Documents and the Reply Brief on August 11, 2016.  The district court issued a sealed Order on November 2, 2016 denying the requested relief.

21



Two and a half months later, on January 19, 2017, Michael Cernovich intervened and moved to unseal the Summary Judgment Record. Aware that the Memoir-Related Documents are part of the Summary Judgment Record, and in light of this Court's repeated admonitions that sealing of summary judgment filings is heavily disfavored, Dershowitz joined Cernovich's motion on February 9, 2017. J.A.-580. The district court denied relief in an Order dated May 3, 2017. Mischaracterizing the Cernovich/Dershowitz motion as an application to modify the Protective Order, rather than a motion to unseal, the district court held that "[t]he Intervenor has not established a compelling need for the documents obtained in discovery which undergird the summary judgment decision." Sp.A.-36.

By failing to treat the Cernovich/Dershowitz motion as one for unsealing—as it was styled—and instead deeming it a motion to modify the Protective Order—which it was not—the district court improperly reversed the burden of proof and turned the applicable legal standard on its head. Instead of requiring that the *proponent of sealing*—here, Giuffre—establish "exceptional

circumstances" justifying withholding judicial documents from public scrutiny, *see Lugosch*, 435 F.3d at 124, the district court placed the burden on those seeking access to demonstrate their need to access presumptively public documents. In reaching that erroneous conclusion, the district court relied on a passage from *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1049 (2d Cir. 1995) for the proposition that the public's right of access is less pressing in cases where summary judgment has been denied. The district court apparently did not realize that, over a decade ago, this Court declared that passage from *Amodeo II* "dicta" and held that its reasoning "cannot stand." *Lugosch*, 435 F.3d at 121.

These appeals followed.

## SUMMARY OF ARGUMENT

As this Court has repeatedly reaffirmed over several decades, "[t]he notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014). The district court's orders defy that notion and are erroneous in three critical respects.

*First*, the district court erred in its analysis of what constitutes a judicial document. The error infected the district court's disposition of both the Cernovich/Dershowitz application to unseal the Summary Judgment Record and Dershowitz's earlier motion to unseal the ████████████████████ ████████. In denying the Cernovich/Dershowitz motion to unseal the Summary

Judgment Record, the district court failed to acknowledge this Court's established

rule that summary judgment filings are judicial documents and thus enjoy a nearly

insurmountable presumption of public access.  *See Cox v. Onondaga Cnty.*

*Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014).  *See infra* Part II(A).  Likewise,

in connection with Dershowitz's initial motion to unseal the ████████████

████████████████████ the district court followed inapposite,

out-of-circuit precedent to hold that documents filed in connection with discovery

motions are not "judicial documents" at all.  That ruling ignored the critical role of

modern discovery in civil litigation and the importance of public monitoring of the

judicial function, and it unceremoniously rejected the considered reasoning of

some ten previous district court decisions applying the law of this Circuit.  *See*

*infra* Part II(B).

     *Second*, the district court failed to make the required findings to

support a compelling need for sealing and secrecy.  Rather than carefully attending

to the specific facts and circumstances applicable to the documents here sought to

be unsealed, the district court simply declared, in conclusory fashion, that (illusory

and unstated) privacy interests outweighed the public's foundational right to

monitor the exercise of government power in this case.  Such casting aside of the

cherished tradition of public access to the courts in favor of jealously guarding the

parties' preference for secrecy was clear error.  *See infra* Part III.

*Third*, the district court erred in refusing to exclude the

███████████████████████████████ from the coverage of the

Protective Order.  The Protective Order was never entitled to any presumption of

enforcement to begin with, and Giuffre is not entitled to use the powers of the

federal courts to keep secret what she already has peddled widely in commercial

settings and divulged to third parties on a non-privileged basis.  As an alternative

basis to afford the public access to these materials, this Court should find that

Giuffre's designation of these materials as "confidential" was improper.  *See infra*

Part IV.

On all of these bases, this Court should reverse both orders and direct

that ██████████████████████████████—at the very least—be

unsealed and made available to the public.  In this case, there is both a public and a

private interest in unsealing these documents, and there is no compelling

countervailing interest that supports maintaining them under seal.

## ARGUMENT

## I.    LEGAL STANDARDS

### A.    Standards of Review

The standard of review that applies to challenges to sealing orders

differs from the one that applies to the denial of a motion to modify a protective

order.  With respect to sealing orders, this Court examines the district court's

"factual findings for clear error, its legal determinations de novo, and its ultimate

decision to seal or unseal for abuse of discretion." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). With respect to applications to modify a protective order, this Court reviews the district court's order for abuse of discretion. *See S.E.C. v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001); *see also Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013).

### B. Applicable Legal Standards

### 1. Sealing of Judicial Documents

While federal courts have the power to seal documents that are filed on the public dockets, that power is limited by both the First Amendment and a common right of access that predates the Constitution. *See United States v. Amodeo (Amodeo I)*, 44 F.3d 141, 145 (2d Cir. 1995). "Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). The two presumptions have different, but related, rationales. "Underlying that First Amendment right of access is the common understanding that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Westmoreland v. CBS, Inc.*, 752 F.2d 16, 22 (2d Cir. 1984) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). The common law right of access, in turn, rests on "the need for federal courts, although independent—

indeed, particularly because they are independent—to have a measure of

accountability and for the public to have confidence in the administration of

justice," *Amodeo II*, 71 F.3d at 1048.

       Both the First Amendment and common law rights of access create a

presumption against secrecy for "judicial documents." *See Newsday*, 730 F.3d at

164 (First Amendment); *Amodeo I*, 44 F.3d at 145-46 (common law). As this

Court has explained, "the item filed must be relevant to the performance of the

judicial function and useful in the judicial process in order for it to be designated a

judicial document." *Amodeo I*, 44 F.3d at 145. Once an item's status as a "judicial

document" has been established, the common law and the First Amendment

demand distinct analyses to determine whether the presumption of access is

overcome.

### a.    The Common Law Test

       The common law affords a presumption of access to *all* judicial

documents. The weight of the presumption is "governed by the role of the material

at issue in the exercise of Article III judicial power and the resultant value of such

information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119.

Thus, courts applying the common-law public access doctrine balance the

importance of the documents sought to be disclosed with countervailing interests

that might outweigh the presumption in favor of access. Courts employ a sliding

scale: "documents that directly affect an adjudication and play a significant role in

determining litigants' substantive rights receive the benefit of a relatively strong [common law] presumption, while the public interest in other documents is not as pressing." *United States v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001) (internal quotation marks and citations omitted). "[C]ountervailing factors"—those that militate against public access—"include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted).

### b.    The First Amendment Test

The First Amendment right of access is "stronger than its common law ancestor and counterpart." *Erie Cnty.*, 763 F.3d at 239. Thus, even where the common law presumption is overcome by "countervailing factors," the First Amendment may still forbid sealing and mandate the disclosure of judicial documents.

In deciding First Amendment access claims, courts consider "experience" and "logic": "(a) whether the documents have historically been open to the press and general public (experience) and (b) whether public access plays a significant positive role in the functioning of the particular process in question (logic)." *Id.* (internal quotation marks omitted). "Once a First Amendment right of access to judicial documents is found, the documents may be sealed only if specific, on the record findings are made demonstrating that closure is essential to

preserve higher values and is narrowly tailored to serve that interest." *Id.* (internal quotation marks and alteration omitted).

## 2. Modification of a Protective Order

Quite apart from the issue of judicial sealing is the scope and propriety of a protective order requiring that documents (typically those exchanged in discovery) be kept confidential by the parties and their lawyers. Such "stipulated orders" are commonplace, of course; courts routinely enter them, and parties routinely rely upon them, as part of a streamlined discovery process. Thus, this Court has held that, "[w]here there has been reasonable reliance by a party . . . , a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *TheStreet.Com*, 273 F.3d at 229 (internal quotation marks and alteration omitted).

That said, the fact that a protective order was entered by a district judge does not mean that the parties' choices about confidentiality are beyond challenge or the power of the court to alter. Such orders may be modified where the parties' reliance on them was not reasonable. "[W]here a litigant . . . could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order." *Id.* at 231. "In such a case, whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *Id.* (internal quotation marks and alteration omitted). In assessing

29

reasonable reliance, this Court considers "(1) the scope of the protective order; (2)

the language of the order itself; (3) the level of inquiry the court undertook before

granting the order; and (4) the nature of reliance on the order." *In re Sept. 11*

*Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (quoting *In re EPDM Antitrust Litig.*,

255 F.R.D. 308, 318 (D. Conn. 2009)).

## II.    BOTH THE FIRST AMENDMENT AND COMMON LAW REQUIRE THAT THE PUBLIC BE PERMITTED TO ACCESS THE ███████████████████████

### A.    The Summary Judgment Record, Including the ███████████ ████████ Comprises "Judicial Documents" to Which a Strong Presumption of Access Attaches

This Court has long made clear that "summary judgment is an

adjudication, and an adjudication is a formal act of government, the basis of which

should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch*,

435 F.3d at 121 (internal quotation marks and alteration omitted).  Accordingly,

"documents submitted to a court for its consideration in a summary judgment

motion are—as a matter of law—judicial documents to which a strong presumption

of access attaches, under both the common law and the First Amendment." *Id.*

The Summary Judgment Record—of which the ███████████

███████ that Dershowitz seeks are a part—is thus entitled to "the highest"

presumption of public access, *id.* at 123: "'Documents used by parties moving for,

or opposing, summary judgment should not remain under seal absent the most

compelling reasons.'" *Cox*, 760 F.3d at 150 (alteration omitted) (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

The district court's order denying unsealing of the Summary Judgment Record largely ignored this authority. Instead, it premised its denial of unsealing on two fundamental errors.

### 1. The District Court Applied the Wrong Standard

First, the district court characterized the motion to unseal the Summary Judgment Record as a motion to modify the Protective Order. Sp.A.-28. But neither Cernovich's motion, nor Dershowitz's memorandum joining it, requested modification of a protective order. J.A.-509; J.A.-580. The district court's misapprehension in this regard caused it to apply the wrong standard. Rather than proceeding, as courts must do on any application to unseal filed judicial documents, from a presumption of public access—under both the First Amendment and the common law—the district court treated the Cernovich/Dershowitz motion as one to modify a protective order, placing the burden on movants Cernovich and Dershowitz to "show []improvidence in the grant of a Rule 26(c) protective order or extraordinary circumstance or compelling need," *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). This was improper and erroneous as a matter of law.

Indeed, this Court has made clear that the two inquiries are distinct, and that, when judicial documents are at issue, the First Amendment and common

31

law presumption of public access trumps any presumption against modifying

protective orders. *See TheStreet.com*, 273 F.3d at 232-33 (noting threshold

question of "whether to apply the presumption in favor of access set forth in

the *Amodeo* cases or the presumption against access set forth in *Martindell*").[7]

Thus, by requiring Cernovich and Dershowitz to show a "compelling need" for

public access, Sp.A.-31, rather than requiring Giuffre to show that sealing is

warranted by "exceptional circumstances," *Lugosch*, 435 F.3d at 121, the district

court applied the wrong standard—and improperly reversed the burdens. This

alone requires reversal.

### 2. The District Court Based Its Ruling on Dicta That This Court Has Expressly Repudiated

Worse yet, the district court also misapprehended the law governing

sealing of summary judgment filings. Instead of faithfully applying the leading

Second Circuit case law—*Joy*, *Lugosch*, and their progeny— the district court

characterized this Court's precedent as standing for the proposition that "where, as

here, a district court denied the summary judgment motion . . . the public interest in

access is not as pressing." Sp.A.-35 (internal quotation marks omitted). For this

proposition, the district court cited language from *Amodeo II*—language that this

Court has long disavowed. In *Lugosch*, this Court confronted the question whether

---

[7] *See Lown v. Salvation Army, Inc.*, No. 04 Civ. 01562, 2012 WL 4888534, at *4 (S.D.N.Y. Oct. 12, 2012) ("any presumption that may exist against modifying a protective order is reversed when the materials involved constitute 'judicial documents,' such as materials filed as part of the submission in a summary judgment motion").

the presumption of access applies to documents that are submitted under seal in connection with a motion for summary judgment that is ultimately denied. The *Lugosch* court squarely held that it did. It reasoned that, since "there would have been a right of public access had the motion been granted, we fail to see why such a right did not attach merely because the motion was denied." *Lugosch*, 435 F.3d at 122 (quoting *Republic of the Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 660 (3d Cir. 1991)). Moreover, the *Lugosch* court disavowed the quotation from *Amodeo* upon which the district court here based its analysis. Calling that language "dicta" and not "the considered decision of . . . this court," *id.* at 121, as well as "unconvincing on the merits," *id.* at 122, this Court expressly held that "[t]his reading cannot stand," *id.* at 121.

By treating documents filed in connection with an unsuccessful motion for judgment differently than it would have had the motion been successful, the district court made a clear error of law. Applying the correct standard, as set forth in *Joy*, *Lugosch* and other cases, the Summary Judgment Record is indisputably entitled to the highest presumption of public access, and "continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. The district court having failed to satisfy this requirement, reversal is required.

33

██ **The District Court Also Erred in Denying Dershowitz's Initial Motion to Unseal the** ████████████████████████████████

1.   ████████████████████████████████████ **Were Judicial Documents Even Prior to Summary Judgment**

For a document to appropriately be deemed a "judicial document," "[i]t is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication." *United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006). ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Because these documents were submitted to the Court to influence its decision-making, all qualified as "judicial documents" from the moment they were first filed.

Whether documents filed in connection with a discovery motion are judicial documents to which the presumption of access applies is a question of first impression in this Circuit, and courts are "split" on the question. *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 970 A.2d 656, 683 (Conn. 2009). *Compare, e.g.*, *Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. 1988) (holding that discovery motions "fall within" the presumption of access to judicial documents "precisely because discovery is so important in trial practice"), *with, e.g.*, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993)

(disagreeing with *Mokhiber* but noting "valid reasons why one could conclude that the common law presumptive right of access to pretrial motions is equally applicable to discovery motions").

Importantly, however, district courts in this Circuit, applying this Court's applicable precedents, have almost uniformly held that the presumption of access applies to discovery motion filings. "Where, as here, the disputed documents are filed in support of or in opposition to a discovery motion *other than a motion as to the discoverability or confidentiality of the disputed documents themselves*, they are properly deemed 'judicial documents,' requiring the court to balance the public access presumption against the competing considerations identified by the party seeking to seal them." *Royal Park Investments SA/NV v. Deutsch Bank Nat'l Trust Co.*, No. 14 Civ. 04394, 2016 WL 7188795, at *2 (S.D.N.Y. Dec. 7, 2016) (collecting authorities) (emphasis added).[8]

---

[8] *Accord, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014) ("Here, the documents to be submitted are in support of a motion to compel discovery and presumably will be necessary to or helpful in resolving that motion. They are, therefore, judicial documents."); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) (applying presumption of public access to papers filed in connection with a motion for reconsideration of a discovery order); *In re Gushlak*, No. 11-MC-0218, 2012 WL 3683514, at *3 (E.D.N.Y. July 27, 2012) (documents filed in support of and opposition to a motion for discovery assistance, including motions to quash, were judicial documents); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) ("declarations and a memorandum of law" seeking to limit discovery "clearly constitute 'judicial documents'"); *In re Omnicom Grp., Inc. Secs. Litig.*, No. 02 Civ. 4483, 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) (letter briefs and attached exhibits submitted to the court in connection with a privilege dispute were "submitted in this case to request the court to exercise its adjudicative powers in favor of the parties' respective views of a discovery dispute" and therefore were judicial documents); *Schiller v. City of N.Y.*, No. 04 Civ. 7922, 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006) (briefs and supporting

In the teeth of this overwhelming authority, the district court ██████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

The decisions relied upon by the district court are not only

non-binding; they lack any persuasive force at all.  Each of them arrives at the rule

the district court applied *only* by relying on legal propositions this Court has

already rejected.  For example, the Seventh and Ninth Circuits hold that the

presumption of public access does not apply to *any* documents submitted to the

court under seal pursuant to a protective order.  *See, e.g., Phillips v. Gen. Motors,*

307 F.3d 1206, 1213 (9th Cir. 2002); *United States v. Corbitt*, 879 F.2d 224, 228

(7th Cir. 1989).  This Court rightly rejected that precise contention in *Lugosch.*

435 F.3d at 126 ("the mere existence of a confidentiality order says nothing about

whether complete reliance on the order to avoid disclosure was reasonable").  And

---

papers submitted in connection with a dispute over the confidentiality of discovery materials
were "created by or at the behest of counsel and presented to a court in order to sway a judicial
decision" and were therefore "judicial documents that trigger the presumption of public access");
*S.E.C. v. Oakford Corp.*, No. 00 Civ. 2426, 2001 WL 266996, at *1 (S.D.N.Y. Mar. 16, 2001)
(applying presumption of access to judicial documents to motion papers filed in connection with
a discovery dispute).

the First and Eleventh Circuits afford the presumption of access only to "pretrial motions that require judicial resolution of the merits," *Chicago Tribune Co.*, 263 F.3d at 1312, or filings that "request . . . a disposition of substantive rights," *Anderson*, 805 F.2d at 13—another proposition this Court has long refused to endorse, *see, e.g.*, *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987).

It was error for the district court to rely on decisions that reflect cramped constructions of the public's access rights. The district court's analysis contravened this Court's repeated holdings that some presumption of access exists with respect to "*any* . . . document which is presented to the court to invoke its powers or affect its decisions," *Amodeo II,* 71 F.3d at 1050 (emphasis added). As one state court of last instance within this Circuit has observed, this Court, as distinct from other circuits, generally "construes judicial documents more broadly" to include "documents that are filed with the court that reasonably may be relied upon in support of *any part* of the court's adjudicatory function." *Rosado*, 970 A.2d at 678 (emphasis added) (describing the Second Circuit's approach as consistent with *Mokhiber*). Under that longstanding definition, the ██████████████████████████████████████████████ are "judicial documents."

## 2. The Public Has a Common Law Right to Access the ████████████████████████████████

Treating materials submitted in connection with a discovery motion as judicial documents that the public may presumptively access gives effect to the purposes of the common law right, which is to facilitate public monitoring of the

37

exercise of judicial power. "Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior." *Amodeo II*, 71 F.3d at 1048.

Here, the ███████████████—materials to which Dershowitz sought access in his initial application—███████████████████

███████████████████████████████████

███████████████████████████████████

█████████████ *See* Fed. R. Civ. P. 45(g) (providing that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it"). Compelling testimony is a quintessential exercise of coercive judicial power that the public is entitled to monitor. *See United States v. Bryan*, 339 U.S. 323, 331-32 (1950) (elaborating the importance of balancing "the great power of testimonial compulsion" against exemptions "grounded in a substantial individual interest which has been found, through centuries of experience, to outweigh the public interest in the search for truth"). That the underlying motion involved the First Amendment-sensitive area of journalistic privilege is even more reason that the public's right to access should be upheld.

More generally, judicial decisions about compelling discovery—which "carry the threat of coercive sanctions and seek to enforce the court's own orders," *Newsday*, 730 F.3d at 164—are no less proper subjects for public monitoring than other exercises of government power. Just as disclosure of pretrial

38

suppression proceedings in criminal cases "enhances the basic fairness of the judicial process and the appearance of fairness that is essential to public confidence in the system," *In re N.Y. Times Co.*, 828 F.2d at 114, affording access to proceedings concerning the permissibility and scope of civil discovery provides an important check on the exercise of Article III power.

██████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████ This Court has recognized that a district court's decisions concerning the scope and timing of discovery may "affect a party's substantial rights." *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985). As one court has aptly explained in holding that filings in connection with discovery motions are subject to the access presumption:

> The discovery process is clearly an important element of civil litigation. The manner in which it proceeds may prove decisive to the outcome of particular disputes, and the availability of mandatory discovery has greatly affected the way in which our courts do justice. Moreover, discovery procedures have become a continuing focus of controversy and reform within the judiciary and the legal community. This debate has arisen precisely because discovery is so important in trial practice. If we take as our standard that the public's right of access attaches to decisions of major importance to the administration of justice, then discovery motions and hearings fall within the ambit of this right.

*Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. Ct. App. 1988) (internal quotation marks and citations omitted).   Courts in this Circuit have repeatedly recognized that filings submitted in connection with a motion to alter the pace or schedule of litigation are subject to public access.  *See, e.g.*, *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015) (applying presumption of public access to "papers filed in connection with [a] motion to stay"); *Skyline Steel, LLC v. PilePro, LLC*, No. 13 Civ. 8171, 2015 WL 556545, at *4 (S.D.N.Y. Feb. 9, 2015) (same).

"While adjudication of the ultimate merits of the case arguably triggers the highest degree of protection against sealing, this does not imply that motion papers addressed to a discovery dispute do not trigger the public-access presumption."  *In re Omnicom Grp.*, 2006 WL 3016311, at *4.  Because the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ "those documents are entitled to the strongest presumption of public access."  *In re Gushlak*, 2012 WL 3683514, at *4.

> **3.    The First Amendment Guarantees Access to the Memoir-Related Documents and the Reply Brief**

Even if the common law did not compel the conclusion that the Memoir-Related Documents and the Reply Brief must be made public, the First Amendment would supply an alternative basis for their disclosure.  The First Amendment presumption of access to judicial documents applies when "experience and logic" indicate that "the documents have historically been open to

the press and general public," and that "public access plays a significant positive

role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at

120 (internal quotation marks omitted).

With respect to the "experience" prong of the First Amendment test,

this Court has held that "the notion of public access to judicial documents is a

capacious one: the courts of this country have long recognized a general right to

inspect and copy public records and documents, including judicial records and

documents," in order to facilitate public monitoring. *Erie Cnty.*, 763 F.3d at 241

(internal quotation marks omitted). Discovery motions and the documents

supporting them are routinely filed in courts across the country without sealing and

with the understanding that such documents are publicly accessible. And while the

relatively recent history of modern civil discovery practice means there is no

ancient common-law analogue to the contemporary discovery motion, "[t]his

absence, of course, is not surprising, for compelled discovery is a child of the first

Federal Rules of Civil Procedure adopted in 1938." *Mokhiber*, 537 A.2d at 1111.

"It would make little sense to shut off access for what is, practically speaking, a

new kind of judicial process just because that particular procedure did not exist at

common law." *Id.* at 1112. Yet that is precisely what the district court's decision

purported to do, ignoring that public access to discovery motions will "serve the

same values and policies which underlie" the public right of access generally, *see*

*id.*

As to the "logic" prong, it is clear that public monitoring has an important role to play in this case. Giuffre's allegations against Dershowitz have been the subject of significant public interest and have been discussed at length in an array of international news stories. Indeed, in the CVRA Action, Giuffre's own counsel cited "strong current media interest in the case" to *oppose* sealing the pleadings, pointing to Churcher's stories among others as examples. *Doe v. United States*, No. 08 Civ. 80736 (S.D. Fla.), ECF No. 51, at 7. "The issues involved are manifestly ones of public concern and therefore ones which the public has an interest in overseeing." *Erie Cnty.*, 763 F.3d at 242.

"Openness in court proceedings not only gets to the truth more readily, but also results in all those connected with the trial—parties, counsel, witnesses, jurors and judges—performing their functions more conscientiously." *United States v. Cojab*, 996 F.2d 1404, 1407 (2d Cir. 1993). Unfortunately, the district court in this case consistently applied a perverse presumption *in favor* of secrecy. Its orders require reversal.

## III. THERE ARE NO COUNTERVAILING FACTORS SUFFICIENT TO JUSTIFY CONTINUED SEALING

"Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Lugosch*, 435 F.3d at 124. Continued

secrecy would only be permissible on the basis of "specific, on the record findings that higher values necessitate a narrowly tailored sealing." *Id.* at 126.

Here, however, no such findings have ever been made; "the trial judge provided no explanation why his broad order denying access to information . . . was not limited to information that was actually sensitive and deserving of privacy protection." *Press Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 513 (1984). The meager justifications the district court articulated for denying unsealing do not come close to satisfying this Court's demanding standards.

First,  Sp.A.-22. Of course, that is precisely what the public's right to access judicial documents is for, and why it exists. *Amodeo II*, 71 F.3d at 1048 ("Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control."). The district court should not have even considered Dershowitz's motivation in seeking access to the documents; certainly, it should not have allowed

to influence its decision. As this Court has expressly held, the motive of the person seeking disclosure of judicial documents is "irrelevant to defining the

43

weight accorded to the presumption of access." *Id.* at 1050. There was no basis to find that the continued secrecy of the Memoir-Related Documents and the Reply Brief was warranted, let alone "essential to preserve higher values."

In any event, Dershowitz's motive—to defend himself in the court of public opinion against false charges deliberately made for widespread publication—is understandable, even commendable. It is part of the great American tradition—a tradition whose spirit is reflected in the First and Sixth Amendments—to defend oneself where and when falsely accused. Here, Dershowitz was accused in the court of public opinion, and the Constitution supports his right to speak truth in his own defense. It would be particularly unfair for Dershowitz to now be punished for attempting to defend his reputation publicly, given that it was Giuffre's decision to make her initial allegation in a public filing, rather than under seal. Having elected to level her accusation in public, Giuffre should not now be permitted to maintain under seal documents that prove it false.

Second, the district court's fleeting mention of unspecified harm that would result from public disclosure of "sensitive" information contained in the parties' filings was insufficient to overcome the presumption of access. Unsealing the Summary Judgment Record (including, or at least, the ███████████████ ███████) threatens none of the harms courts have recognized as sufficient to outweigh the right of access to judicial documents. ███████████████

44

███████████████████████████████████████████. Thus,

the general rule "that the common law right of access is qualified by recognition of

the privacy rights of the persons whose intimate relations may thereby be

disclosed," *Newsday*, 895 F.2d at 79, has no application. Giuffre ought not be

allowed to deny Dershowitz the right to disseminate ████████████████,

especially after she has spent the last several years smearing him publicly in every

available forum.

      Nor does Giuffre possess any claim to privacy concerning the

information Dershowitz seeks to unseal. ██████████████████

█████████████████████████████████████

██████████████████████████████

██████████████ Nothing could be less private. ████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████

      Indeed, what is crystal clear is that, by her publicity-seeking conduct,

Giuffre has waived any conceivable claim to confidentiality. She has publicly filed

her accusations of sexual misconduct against an array of individuals, including

Dershowitz, in at least two lawsuits besides this one. J.A.-657-58 ¶¶ 10-12;

J.A.-659-60 ¶¶ 15-20. She has sold her story to the media and sat for extensive

interviews with Churcher and other reporters about the very same allegations that

are the subject of the documents she now seeks to keep under seal.

J.A.-658-59 ¶ 13; J.A.-663-64 ¶¶ 26-27.  She even "agreed to waive her

anonymity" in order to disseminate her story publicly.  Sharon Churcher,

*Exclusive: Girl at Center of Underage Sex Procurement Case That Scandalised*

*America Describes How She Was Introduced to the Prince*, MAIL ON SUNDAY, Feb.

27, 2011. ████████████████████████████████████████████

███████████████████████████ J.A.-663-64 ¶ 27.  Although the

interview has not yet aired, it could be broadcast at any time, likely repeating once

again the same allegations for which Giuffre has claimed confidentiality in the

context of this litigation.  *See id*.  And her lawyers have continued to give

interviews insinuating Dershowitz's guilt, even after reaching a settlement with

him and agreeing to release a public statement withdrawing their own public filing

of the accusations against him.  *See* J.A.-330.

        To put the matter plainly, the broad dissemination of the information

contained in the Summary Judgment Record, █████████████████████

███████████████, appears to have been Giuffre's principal line of work

for the last several years.  Having made every effort to publicize these allegations

for personal and commercial gain, Giuffre should not be permitted now to make an

abrupt about-face and claim that they are entitled to judicial protection, simply

because the rank falsity of her statements will thereby be exposed.  "The

information at issue . . . does not involve the type of medical, health-related,

family, or personal financial matter to which courts grant the greatest protection."

*United States v. Martoma*, No. S1 12 Cr. 973, 2014 WL 164181, at *6 (S.D.N.Y.

Jan. 9, 2014). Instead, it involves contemporaneous evidence of ████████

████████████████████████████████. He is entitled to access

and use that evidence to defend himself in public.

      The district court's contrary decision is unsupportable, even under an

"abuse of discretion" standard. The court merely intoned that some of the

documents at issue included "evidence of assault, medical records, and emails,"

Sp.A.-32—as if documents in those categories were somehow self-evidently

deserving of a sealing order; it made no effort to distinguish among the dozens of

different exhibits and filings comprising the Summary Judgment Record. This

approach ran inescapably afoul of this Court's teaching that "[b]road and general

findings by the trial court . . . are not sufficient to justify closure." *Lugosch*, 435

F.3d at 120 (internal quotation marks omitted). Certainly, they offer no credible

explanation for denying access to the ███████████████.

      So intent was the district court to maintain secrecy in this case that it

characterized the unsealing request as an effort "to give an intervenor access to

discovery information about the sexual assault of a minor," Sp.A.-33—an assertion

that fails to reckon with or even mention the exhaustive detail in which Giuffre and

her representatives have previously described her alleged experiences of sexual

assault publicly, including in media interviews and a book manuscript. Indeed, the district court apparently forgot that Giuffre's *own counsel* had, just weeks earlier, described what the Court called "the confidential fact contentions of the parties," Sp.A.-31, *in open court* during an oral argument whose transcript is publicly available. Giuffre's lawyer openly discussed what he termed "a plethora of evidence that shows that the defendant sexually abused and sexually trafficked my client when she was a minor," J.A.-621-22, including "a number of witnesses who corroborate the story that they were similarly abused by both Maxwell and Epstein," and "eyewitnesses at the time back in 2000 who defendant asked to assist in this process," J.A-622. Plaintiff's counsel even characterized some of the very documents that were filed under seal, including "the flight log showing over 23 flights when my client was a minor flying with Maxwell and Epstein," *id.*, "pictures from early 2000," *id.*, "hospital records from when [Giuffre] was a minor here in New York with them," J.A-623; "time and travel records," *id.*, "message pads," *id.*, a "black book" belonging to a specific witness, referred to by name, "which has a Florida massage section that has a 14-year-old girl's name in it," *id.,* and even an "FBI 302" report naming a specific perpetrator of alleged sexual abuse, *id.* These disclosures alone undermine Giuffre's insistence that the documents must remain confidential. *See Murphy v. DirecTV*, 724 F.3d 1218, 1233 n.9 (9th Cir. 2013) (finding that counsel waived confidentiality of previously sealed documents by characterizing their contents in court).

Even putting aside counsel's statements in court, the district court's failure to consider Ms. Giuffre's years of selective public disclosure of her allegations of sexual abuse in determining the need for prospective secrecy was a clear abuse of discretion. "Any countervailing privacy interest" Giuffre may assert "cannot defeat the strong presumption of public disclosure where the material [she] seeks to seal is already in the public domain." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013).

Only overwhelming considerations militating toward secrecy can overcome the public's common-law and constitutional right to observe and monitor the exercise of judicial power (and Dershowitz's private First Amendment right to speak publicly in his own defense). No such circumstances are present here. The district court erred in denying the motion to unseal the Summary Judgment Record and ███████████████████████████████. Reversal is required.

## IV.   ALTERNATIVELY, THE PROTECTIVE ORDER SHOULD BE MODIFIED TO PERMIT DISCLOSURE OF THE MEMOIR-RELATED DOCUMENTS AND THE REPLY BRIEF

While it is beyond cavil that the Summary Judgment Record (which includes the Memoir-Related Documents) comprises judicial documents and thus is entitled to an exceedingly strong presumption of public access, there is a split of authority as to whether a document solely submitted in connection with a discovery motion meets that definition. *See Rosado*, 970 A.2d at 683. But even

where discovery materials are found not to be judicial documents, they are not automatically entitled to confidential treatment. *See Vazquez v. City of N.Y.*, No. 10 Civ. 6277, 2014 WL 11510954, at *1 (S.D.N.Y. May 2, 2014).

In this case, the only document in dispute that was *solely* submitted in connection with a discovery application is the Reply Brief. Here, although Dershowitz is in rightful possession of the Reply Brief, he is prohibited from disseminating it by the parties' stipulated, blanket Protective Order. *See* J.A.-124. That order permits the parties to designate documents as confidential without particularized judicial scrutiny, which is how ███████████████████ ███████████████████████) became subject to a protective order in the first instance. Because there was no basis for judicial protection of the ███████████████████████ to begin with, the district court erred in denying Dershowitz the alternative relief of modifying the Protective Order to permit their disclosure.

Federal Rule of Civil Procedure 26(c) permits issuance of a protective order only upon "good cause shown," and requires that such orders issue only "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[I]f good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (internal quotation marks omitted). A protective order requires "particular

and specific demonstration of fact as distinguished from stereotyped and conclusory statements" showing the harm that would result from disclosure. *Louissier v. Universal Music Grp., Inc.*, 214 F.R.D. 174, 177 (S.D.N.Y. 2003).

This Court's general rule that a protective order should not be modified "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need," *TheStreet.com*, 273 F.3d at 229 (2d Cir. 2001), applies only when the parties have *reasonably* relied on the protective order in producing discovery. That is not the case here. In this case, the Protective Order is a sweeping and generic stipulation permitting the parties, and not the Court, to set the standards for access and, essentially, to designate anything as confidential. "A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition." *EPDM*, 255 F.R.D. at 319. "*Stipulated* blanket orders are even less resistant to a reasonable request for modification." *Id.*

"An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonably relied on the protective order[:] (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Sept. 11*, 262 F.R.D. at 277 (internal

quotation marks omitted).  Here, all four factors weigh against a finding of reasonable reliance.

*First*, the Protective Order contains "expansive language granting the parties broad latitude to self-designate materials" as confidential, making it unreasonable for any party to have relied on the prospect of indefinite and ironclad confidentiality protections in producing discovery.  *See EPDM*, 255 F.R.D. at 320; *see also* J.A.-125 ¶ 3 ("Information designated "CONFIDENTIAL" shall be information that is confidential and implicates common law and statutory privacy interests . . . .").

*Second*, the Protective Order allows challenges to confidentiality designations, *see* J.A.127-28 ¶ 11, and permits the Court to modify the order "at any time" for good cause, *id.* ¶ 14.  "Given this provision, it is difficult to see how the [parties] can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret."  *Lugosch*, 435 F.3d at 126.

*Third*, "[t]he level of inquiry undertaken before the Order was entered also weighs in favor of modification because the Court 'so ordered' the parties' stipulation without having cause to determine whether all the documents covered actually warranted protection."  *Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016).  Here, the district court undertook no individualized scrutiny of any particular documents designated confidential or filed under seal.  While this practice can be salutary to the extent it

preserves judicial resources and promotes efficiency in complex civil discovery, it vastly weakens the parties' claim to a reasonable expectation that every document marked confidential will remain subject to a Rule 26(c) order indefinitely.  *See EPDM*, 255 F.R.D. at 319.

*Fourth*, and "[f]inally, the nature of the reliance on the Order weighs in favor of modification because there is no indication that the [parties] relied on the Order to produce documents they would not have otherwise disclosed." *Tradewinds Airlines*, 2016 WL 3951181, at *2 █████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  *See Lugosch*, 435 F.3d at 125.

Even if the parties' reliance on the Protective Order could be deemed reasonable, which it cannot, Dershowitz would handily satisfy *TheStreet.com*'s requirement of a compelling need or extraordinary circumstance.  As an initial matter, "courts within this circuit have found there to be a 'compelling need' or 'extraordinary circumstance' warranting modification where a blanket protective order is entered without a showing of good cause." *Tradewinds Airlines*, 2016 WL 3951181, at *2 (collecting authorities).  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████

      In contrast, there is no basis for a finding of good cause to protect the content of the ████████████████████████████████████████ ██████████████████████████████. She cannot credibly claim that disclosure will cause her "annoyance, embarrassment, oppression, or undue burden or expense," *see* Fed. R. Civ. P. 26.

      Alan Dershowitz never met Virginia Giuffre, and had never even heard of her, until she accused him of raping her repeatedly when she was a child. She chose to bring this lawsuit, subjecting herself to the same Rule 26 requirements all litigants face. Discovery showed that, ████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████. Prohibiting Dershowitz from revealing ███████████████ ██████ to the public, even as accusations of his involvement in repugnant criminal acts continue to be republished in book after book and interview after interview,

54

would be a perversion of the discovery rules. This Court should not countenance such a disgraceful misuse of the courts.

## CONCLUSION

For the foregoing reasons, Dershowitz respectfully requests that the Court reverse and remand.

Dated:      August 24, 2017
            New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

_____/s/_____
Andrew G. Celli, Jr.
David A. Lebowitz

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Appellant*
*Alan M. Dershowitz*

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 13,325 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14-Point Times New Roman</u>.

Dated:  August 24, 2017