# 16-3945-cv(L),
## 17-1625 (CON), 17-1722 (CON)

# United States Court of Appeals
## for the
# Second Circuit

VIRGINIA L. GIUFFRE,

*Plaintiff-Appellee,*

– v. –

GHISLAINE MAXWELL,

*Defendant,*

– v. –

SHARON CHURCHER, JEFFREY EPSTEIN,

*Respondents,*

ALAN M. DERSHOWITZ, MICHAEL CERNOVICH, dba CERNOVICH MEDIA,

*Intervenors-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR INTERVENOR-APPELLANT
## ALAN M. DERSHOWITZ
## [REDACTED]

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Intervenor-Appellant*
 *Alan M. Dershowitz*

# TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ...............................................................................................5

    I.    THE DISTRICT COURT'S ORDERS DENYING UNSEALING
          VIOLATE THE FIRST AMENDMENT AND COMMON-LAW
          RIGHT OF ACCESS TO JUDICIAL DOCUMENTS, REQUIRING
          REVERSAL ........................................................................................5

          A.    The Public Has a Well Established Right to Access the
                Summary Judgment Record, Including ███████████
                ███████ ..................................................................5

          B.    The Public Has an Independent Right to Access the
                 ███████████████████████████Due to Their
                Status as Judicial Documents Filed in Connection with
                Discovery Motions ......................................................10

          C.    The Existence Of a Protective Order Is Irrelevant to the Public's
                Right of Access ..........................................................13

    II.   EVEN IF THE PUBLIC HAD NO RIGHT TO ACCESS THE
          MATERIALS SOUGHT, THE DISTRICT COURT SHOULD HAVE
          MODIFIED THE PROTECTIVE ORDER TO PERMIT
          DISSEMINATION OF THE ███████████████████
          ███████████████ ..................................................15

    III.  GIUFFRE'S INFLAMMATORY ALLEGATIONS AGAINST
          DERSHOWITZ ARE IRRELEVANT, PREJUDICIAL AND
          DEMONSTRABLY FALSE ..............................................19

CONCLUSION ..........................................................................................28

i

# TABLE OF AUTHORITIES

PAGE NO(s).

**Cases**

*Anderson v. Cryovac, Inc.*,
   805 F.2d 1 (1st Cir. 1986)............................................................12

*Atmospherics, Ltd. v. Hansen*,
   269 A.D.2d 343 (2d Dep't 2000)..................................................9

*Cox v. Onondaga Cnty. Sheriff's Dep't*,
   760 F.3d 139 (2d Cir. 2014) ..........................................................5

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003) .........................................17

*Huminski v. Corsones*,
   396 F.3d 53 (2d Cir. 2005) ...........................................................14

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   255 F.R.D. 308 (D. Conn. 2009) ..................................... 17, 18, 19

*In re Parmalat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009)...................................................9

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
   960 F. Supp. 2d 383 (E.D.N.Y. 2013)...........................................7

*Joy v. North*,
   692 F.2d 880 (2d Cir. 1982) ..........................................................5

*La Buy v. Howes Leather Co.*,
   352 U.S. 249 (1957).....................................................................26

*LiButti v. United States*,
   107 F.3d 110 (2d Cir. 1997) ........................................................22

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ....................................... 5, 10, 13, 18

*Lytle v. JPMorgan Chase*,
   810 F. Supp. 2d 616 (S.D.N.Y. 2011) ...........................................9

*Mokhiber v. Davis*,
    537 A.2d 1100 (D.C. 1988) ..................................................................... 11, 12

*N.Y. Times Co. v. Biaggi*,
    828 F.2d 110 (2d Cir. 1987) ...........................................................................12

*Newsday LLC v. Cnty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ...........................................................................14

*Phillips v. Gen. Motors,*
    307 F.3d 1206 (9th Cir. 2002) ........................................................................11

*Royal Park Investments SA/NV v. Deutsch Bank Nat'l Trust Co.*,
    No. 14 Civ. 04394, 2016 WL 7188795 (S.D.N.Y. Dec. 7, 2016) ................13

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001) ...........................................................................11

*Stringfellow v. Concerned Neighbors in Action*,
    480 U.S. 370 (1987)..........................................................................................16

*United States v. Amodeo ("Amodeo II")*,
    71 F.3d 1044 (2d Cir. 1995) .............................................................................8

*United States v. Corbitt*,
    879 F.2d 224 (7th Cir. 1989) ..........................................................................11

*United States v. Erie Cnty.*,
    763 F.3d 235 (2d Cir. 2014) ...........................................................................10

*United States v. Erie County*,
    763 F.3d 235 (2d Cir. 2014) ...........................................................................27

*United States v. Kravetz*,
    706 F.3d 47 (1st Cir. 2013)..............................................................................12

## PRELIMINARY STATEMENT

Virginia Giuffre's brief is a study in misdirection. Unable to overcome the strong presumption in favor of public access to judicial documents, and unwilling to acknowledge the district court's refusal to apply this Court's precedents, Giuffre's brief resorts to misstatements of the parties' positions and ultimately to character assassination. As a matter of law, reversal of the district court's rulings is required. *See* Parts I and II, *infra*. But where an honorable man's reputation is ruthlessly maligned before this Court, the personal allegations require a response as well, both to contextualize Alan Dershowitz's motion to unseal and to set the record straight. *See* Part III, *infra*.

Alan Dershowitz has lived an exemplary personal life amidst a controversial public career. In December 2014, he was falsely accused of having sex with an underage woman he never met. That false accusation, and the lower court's willingness to allow it to linger unanswered even as evidence of its falsity remains under seal, is at the heart of this appeal.

███████████████████████████████

█████████████████████████████████

██████████████████████████████

████████████████████████████

█████████████████████████████████

██████████████████████████████████



████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ The effect of this sealing

is that the public is aware that Dershowitz has been *accused* of pedophilia and

sexual crimes, but is *not* aware that ████████████████████████

████████████.

      Virginia Giuffre and her lawyers want to keep it that way; the current

imbalance in publicly-available information is by design. ████████████

████████████████████████████████████████████

██████████████████████████ Previously, Giuffre had

never—in the course of a decade since she was allegedly abused—included

Dershowitz among the men to whom she claimed she was trafficked. After their

calculated decision to *publicly* accuse Dershowitz in a court document, Giuffre and

her attorneys have aggressively sought to *shield* from public view any evidence

that would prove that Dershowitz was being framed.

      Now, in this appeal, these same lawyers have doubled down,

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

      Dershowitz is unbowed and unafraid.  He believes that the question of what the sealed documents in this case do or do not prove should be judged by the marketplace of ideas, where both sides can make arguments based on a shared set of public facts.  It is that presumption of openness upon which the public's right to access judicial proceedings is based.  What Giuffre seeks instead is a one-sided presentation, where her vicious accusations are known to the public, but evidence contextualizing and undermining those accusations remains sealed.  Giuffre's practice of selectively publicizing accusations and sealing exculpatory evidence is an abuse of the court system and is irreconcilable with fundamental First Amendment values.  The district court erred in countenancing the practice, and this Court should reverse and unseal ███████████████████████████ immediately.

---

[2] *See infra* Part III.

4

**ARGUMENT**

I. **THE DISTRICT COURT'S ORDERS DENYING UNSEALING VIOLATE THE FIRST AMENDMENT AND COMMON-LAW RIGHT OF ACCESS TO JUDICIAL DOCUMENTS, REQUIRING REVERSAL**

A. **The Public Has a Well Established Right to Access the Summary Judgment Record, Including** ███████████████

Giuffre's brief has remarkably little to say about the public right of access to judicial documents, because her legal position is indefensible under decades of this Court's authority. For more than 35 years, this Court has repeatedly made clear that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982); *accord Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). Giuffre does not even attempt to explain how sealing nearly the entire Summary Judgment Record can be squared with this unambiguous rule.

Instead, Giuffre, who had multiple opportunities to prove that the sealing she sought was justified, now argues that this Court should remand and give the district court *another* opportunity to make the appropriate factual findings. *See* Appellee Br. at 57-58. Her justification for this request—that the district court was somehow not on notice that Intervenors sought to unseal the Summary Judgment Record—is makeweight. Dershowitz expressly asked the district court

5

"to unseal all papers filed under seal in relation to Defendant's pending motion for summary judgment," noting that "the right of access to summary judgment papers is well-settled in this Circuit." J.A.-580. Giuffre's strange assertion that to decide this appeal under the right-of-access doctrine would be "to entirely reframe the case," Appellee Br. at 49, rests on a single, out-of-context use of the phrase "modify a protective order" in a brief filed in the district court by Intervenor-Appellant Cernovich Media. *See* Appellee Br. at 57 (quoting C.M.A.-97). Even if that document somehow bound Dershowitz, it is abundantly clear that Cernovich Media sought to unseal the Summary Judgment Record. *See* J.A.-509; C.M.A.101-02. Indeed, the very page relied upon repeatedly in Giuffre's brief uses the variations of the words "sealing" and "unsealing" seven different times. *See* C.M.A.-97.

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ The district court had ample opportunity to make the requisite findings to overcome the presumption of public access; it simply did so erroneously.

First, the district court failed to recognize that the documents Dershowitz seeks to unseal relate to ██████████████████████████

████████████████████████████████████████████████

6

██████████████████████████████ The nature of Giuffre's allegations has been disclosed repeatedly —primarily by Giuffre herself and by her representatives—in the media and in court filings over the course of many years, and have even been discussed in open court in this very case. *See* J.A.-622-23; J.A.-657-60 ¶¶ 10-12, 15-20; J.A.-663-64 ¶¶ 26-27; J.A.-342-81. She has been paid large sums to publish her story, J.A.-670 ¶ 45, and more recently sat for an interview on the subject with ABC News, J.A.-663-64 ¶ 27. Giuffre's only response to the obvious inconsistency between this history of public disclosure and her current efforts to maintain the Summary Judgment Record under seal is to claim that she has spoken about Dershowitz only in "appropriate court testimony and pleadings," Appellee Br. at 60. But that is a red herring: ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ The Summary Judgment Record comprises all the documents the parties considered the most crucial to the substance of their claims and defenses. Because a party asserting a privacy interest "cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain," *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013), the district court's blanket determination that those documents merited sealing was reversible error.

7

Giuffre also continues to rely on Dershowitz's supposed improper "personal vendetta" against Giuffre as a basis to disregard the public right of access, despite her admission that *Amodeo II* expressly prohibits consideration of motive. *See* Appellee Br. at 58 (quoting *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1050 (2d Cir. 1995)). Her unsupported claim that Dershowitz's assertion of his constitutional rights in this proceeding is part of a conspiracy to "victim shame" her, Appellee Br. at 59, would be irrelevant even if it were true—which it is not.[3] This Court has held that motive considerations "are best weighed as part of an assertion by a person or firm of a right of privacy based on an anticipated injury as a result of disclosure," not as a factor going to the weight of the presumption of access. *Amodeo II*, 71 F.3d at 1050. Giuffre has no right of privacy over accusations of repugnant criminal conduct she has spent years levying through the courts and the media. This Court's cautioning that "personal vendettas . . . need not be aided," *id.* at 1051, therefore has no application.

Giuffre further contends that ████████████████████

████████████████████████████████████████████████████

---

[3] Dershowitz unequivocally denies Giuffre's repeated claims of a conspiracy between Michael Cernovich and him. As a member of the bar for more than fifty years, and as an officer of the court, Dershowitz states without reservation that he neither suggested nor facilitated nor had any involvement whatsoever in Cernovich Media's motion to intervene. The claim that Dershowitz and Cernovich secretly coordinated their applications to the lower court, or worked with one another on this case, is baseless and untrue. While it appears from images reproduced in Giuffre's brief that Dershowitz met Cernovich and agreed to be interviewed for a film he made, Dershowitz—who gives hundreds of interviews annually, to all manner of media outlets—has no recollection of the encounter and certainly rejects as unacceptable the views expressed by Cernovich in the statements reproduced in Giuffre's brief.

 Giuffre's objections are precisely the kind of "broad allegations of harm unsubstantiated by specific examples or articulated reasoning" that cannot justify sealing judicial documents. *See Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011).

There are no "countervailing factors" or "higher values," *see Lugosch*, 435 F.3d at 124, that could justify the sealing orders here.[4]  Under the circumstances, remand is unnecessary, and this Court should order the Summary Judgment Record unsealed.  *United States v. Erie Cnty.*, 763 F.3d 235, 243 (2d Cir. 2014) (reversing sealing order on the basis of appellate record where proponent of sealing "would have nothing to offer before the District Court that it had not already proffered").

## B.  The Public Has an Independent Right to Access the ███████████████████████████████████ Due to Their Status as Judicial Documents Filed in Connection with Discovery Motions

Even if Giuffre were correct that unsealing the Summary Judgment Record was not properly before the district court—which she is not—Dershowitz still would be entitled to reversal of the district court's separate November 2, 2016 order ████████████████████████████████████████████████████

Giuffre's brief does not even *mention* the overwhelming weight of authority in this Circuit holding that materials submitted in connection with discovery motions are judicial documents entitled to a presumption of public access.  *See* Appellant Br. at

---

[4] Giuffre's complaint that Dershowitz "seeks to *selectively* release information about himself from the case below," Appellee Br. at 61, is as perplexing as it is baseless.  Dershowitz moved to unseal a variety of records—including the *entirety* of the Summary Judgment Record, which contains all the documents Giuffre's counsel selected to demonstrate the merits of her claims to the district court—and the district court ruled against him.  Having suffered an adverse decision below, Dershowitz appealed.  If Giuffre wishes to unseal *other* documents the district court has ordered sealed—as it has, largely at Giuffre's urging, with respect to hundreds of documents filed in the underlying action—she is welcome to move for the appropriate relief before the district court in the first instance, as Dershowitz did.  If she loses, she can appeal.

35 & n.8.  Nor does she address the reasoning underlying these decisions: that the presumption of access to judicial documents applies to discovery motions "precisely because discovery is so important in trial practice," *Mokhiber v. Davis*, 537 A.2d 1100, 1112 (D.C. 1988), and involves the use of coercive judicial power to compel disclosure.  Because discovery motions are "presented to the court to invoke its powers or affect its decisions," *Amodeo II,* 71 F.3d at 1050, the presumption of access applies.

Giuffre's contrary arguments are unpersuasive.  Defending the district court's reliance on out-of-circuit authorities, she contends that the rules adopted by the Ninth and Seventh Circuits are consonant with this Court's precedent.  But she fails to explain how this Court's teachings could ever be reconciled with a rule that "the usual presumption of the public's right of access is rebutted" when materials are "filed with the court under seal pursuant to a valid protective order," *see Phillips v. Gen. Motors,* 307 F.3d 1206, 1213 (9th Cir. 2002); *see also United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989).  This Court has held *the exact opposite*, concluding that while there is "a general and strong presumption *against access* to documents sealed under protective order," *Amodeo* and its progeny stand for the proposition "that a subspecies of sealed documents in civil cases—so-called 'judicial documents'—deserve a presumption *in favor of access*."  *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001).

Giuffre's embrace of the First Circuit rule likewise fails: that court applies the access presumption only to filings involving "disposition of substantive rights," *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986), defined narrowly to exclude materials this Court would doubtless consider judicial documents. *Compare, e.g.*, *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (holding that no presumption of access applies to a criminal defendant's request for a subpoena because "public access has little positive role in the criminal discovery process"), *with*, *e.g.*, *N.Y. Times Co. v. Biaggi*, 828 F.2d 110, 114 (2d Cir. 1987) (recognizing presumption of access to pretrial motion papers filed by criminal defendants because "[p]ublic disclosure of such proceedings enhances the basic fairness of the judicial process and the appearance of fairness that is essential to public confidence in the system"). The passage of *Anderson* on which Giuffre relies, *see* Appellee Br. at 52, embodies this approach: it bases its rejection of the rule Dershowitz advocates on the premise that it would be "odd" to permit public access to discovery motions but not to discovery materials generally. But motion papers are submitted to a court to influence its *decisions*, and thus trigger the public's interest in monitoring *all* exercises of government power. *See Mokhiber*, 537 A.2d at 1112 (declining to follow *Anderson* because discovery motions "may prove decisive to the outcome of particular disputes, and the availability of mandatory discovery has greatly affected the way in which our courts do justice"). That is why this Court has repeatedly held that the presumption of public access

attaches to "*any* . . . document which is presented to the court to invoke its powers

or affect its decisions," *Amodeo II,* 71 F.3d at 1050 (emphasis added), and why

nearly every court bound by its decisions has applied that rule to discovery

motions.  *See Royal Park Investments SA/NV v. Deutsch Bank Nat'l Trust Co.*, No.

14 Civ. 04394, 2016 WL 7188795, at *2 (S.D.N.Y. Dec. 7, 2016) (collecting

authorities).  The district court should have done the same.

### C.    The Existence Of a Protective Order Is Irrelevant to the Public's Right of Access

Much of Giuffre's brief is dedicated to repeating that this Court

should affirm because the district court correctly found that Dershowitz agreed to

be bound by the Protective Order.  This is not an argument *per se*; it is a tautology.

There is no dispute that Dershowitz agreed to the terms of the Protective Order in

his capacity as a potential trial witness.  *See* J.A.-665 ¶ 30.  Accordingly, there is

no need for this Court to review that "finding" for clear error.  *Cf.* Appellee Br. at

30-31.

But Dershowitz's previous access to sealed materials subject to the

Protective Order is irrelevant to a motion to unseal under the right of public access

to judicial documents.  As this Court has held, "the mere existence of a

confidentiality order says nothing" about whether that right requires unsealing

particular judicial documents.  *Lugosch*, 435 F.3d at 126.  Judicial documents are

immune from the general presumption against disclosure that applies to documents

subject to a protective order; they "deserve a presumption *in favor of access*."

*TheStreet.Com*, 273 F.3d at 231.  Thus, "the facts necessary to show good cause for a protective order [for non-judicial discovery documents] will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents."  *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013) ("The district court therefore erred by relying solely on the prior finding of good cause to determine that the First Amendment right did not apply or was outweighed by countervailing factors.").

Giuffre's position appears to be that a member of the public who learns the contents of allegedly confidential documents after agreeing to receive them subject to a protective order prospectively forfeits any challenge to a *subsequent* order sealing those documents after they have been filed with the court. Appellee Br. at 30-31; Sp.A.-25-26.  Giuffre offers no legal authority for that proposition, because none exists.  To the contrary, "exclusion of any person undermines right-of-access principles," *Huminski v. Corsones*, 396 F.3d 53, 83 (2d Cir. 2005), regardless of any role he or she might have played in the underlying proceeding.  The First Amendment and the common law require that "any member of the public—not only members of the public selected by the courts themselves— may come and bear witness to what happens beyond the courtroom door."  *Id.* at 84.  Accordingly, Dershowitz's agreement to abide by the district court's Protective Order—which he has always done, including by filing materials in

connection with this appeal under seal—simply has no bearing on the questions before this Court.



## II.   EVEN IF THE PUBLIC HAD NO RIGHT TO ACCESS THE MATERIALS SOUGHT, THE DISTRICT COURT SHOULD HAVE MODIFIED THE PROTECTIVE ORDER TO PERMIT DISSEMINATION OF THE ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

Giuffre's brief fails to offer *any* rejoinder to Dershowitz's argument that the district court erred in denying his alternative motion to modify the Protective Order. *See* Appellant Br. at 49-55. Instead, she simply repeats her incorrect assertion that Dershowitz's agreement to be bound by the Protective Order bars him from seeking to modify it. *See* Appellee Br. at 32-33. That is

contrary to the explicit terms of the Protective Order, which states that it "may be modified by the Court *at any time* for good cause shown following notice to all parties and an opportunity for them to be heard." J.A.-129 ¶ 14 (emphasis added). Taken to its logical conclusion, Giuffre's argument is that Dershowitz would be entitled to move to modify the Protective Order if he did *not* know the contents of the confidential documents, but is barred from doing so because—based on his status as a witness—he was properly given copies of them. Such illogic need not detain the Court.

Likewise, Giuffre's claim that only *parties* are permitted to challenge the protective order, Appellee Br. at 33, is puzzling. As an initial matter, the Protective Order does *not* bar non-parties from seeking to modify it; the provision to which the district court referred deals with the separate issue of challenges to confidentiality designations. Sp.A-25; J.A.-127 ¶ 11. In any event, the district court *granted* Dershowitz's motion for permissive intervention. Sp.A-16-17. Dershowitz "is now a party to the suit by virtue of [his] permissive intervention," *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375 (1987), and is entitled to challenge the Protective Order.

Beyond this meager deflection, Giuffre offers little in the way of a defense of the district court's decision. She does not dispute that this Court's presumption against modifying protective orders applies only where any reliance on the protective order is reasonable. *TheStreet.Com*, 273 F.3d at 231. Instead,

16

attempting to salvage the district court's inapposite reliance on the *TheStreet.com* standard, Giuffre attempts to recast the overbroad stipulated Protective Order in this case into a careful and narrowly-tailored order that could justify her claims of reasonable reliance. The attempt fails.

First, it is well-established that a party's reliance on an overbroad protective order is inherently unreasonable. *See In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009). Giuffre does not contest this. Instead, she asserts that reliance in this case was reasonable because the Protective Order did not categorically designate the entire discovery record as confidential. *See* Appellee Br. at 41. But the Protective Order defines the scope of its confidentiality protections circularly to include "information that is confidential," J.A.-125 ¶ 3, effectively imposing *no* limit on the secrecy the parties were *unilaterally* permitted to mandate without particularized judicial scrutiny. The Protective Order is thus the paradigmatic overbroad one; as such, it cannot engender reasonable reliance. *See Fournier v. Erickson*, 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003) (granting modification of protective order where stipulated order "allowed for unilateral designation of an exhibit as protected material, and it did not list specific documents, or delineate the kinds of documents, contemplated for protection").

Moreover, that the Protective Order allowed for modification on motion renders any reliance the parties placed on it unreasonable. Giuffre simply

ignores this Court's express holding that such a provision makes it "difficult to see how the [parties] can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." *Lugosch*, 435 F.3d at 126. "Express provisions of an order permitting non-parties to seek access to the protected materials will diminish the reasonableness of reliance a party claims to place on the order's permanent secrecy." *In re EPDM*, 255 F.R.D. at 320. Just as a party cannot reasonably assume ironclad confidentiality where designated information is permitted to be used in accordance with "such orders as may be issued by the Court during the course of this litigation," *see id.* at 321, Giuffre cannot claim reasonable reliance given the Protective Order's provision stating that it "may be modified by the Court at any time," J.A.-129 ¶ 14.

Finally, Giuffre asserts that the district court made a "factual finding" of reasonable reliance. *See, e.g.*, Appellee Br. at 42 (citing Sp.A.-32). There is no factual basis in the record for such a "finding." ██████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████ neither the parties nor any deponents even attempted to make such a showing (no third-party deponents even appeared to oppose Dershowitz's motion). Where, as here, "the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence

of a protective order, the presumption against modification is not as strong." *In re EPDM*, 255 F.R.D. at 323.

Giuffre cannot establish that she reasonably relied on the confidentiality of statements *she made* about the subject matter of a litigation *she commenced*—much less when she has already discussed those same subjects extensively in the press. Accordingly, the Protective Order was not entitled to a presumption against modification.

## III. GIUFFRE'S INFLAMMATORY ALLEGATIONS AGAINST DERSHOWITZ ARE IRRELEVANT, PREJUDICIAL AND DEMONSTRABLY FALSE

Perhaps recognizing her inability to prevail on the law, Giuffre has filled her brief with pages of inflammatory and irrelevant claims about Dershowitz. Although none bears on Dershowitz's clear constitutional and common-law rights to access the materials he seeks, they nevertheless cannot go unaddressed.

As an initial matter, Giuffre does not dispute that she and her attorneys gratuitously placed her unsupported and previously unstated accusations against Dershowitz in the public domain in 2014. *See* Appellee Br. at 9-10. Likewise, they do not contest that those accusations were stricken after the court in the CVRA Action found them "immaterial and impertinent," J.A.-233. While they declare that the court stopped short of imposing Rule 11 sanctions when it struck the entirety of their filings as "unnecessary" and "lurid," J.A.-234-35, they cannot dispute that the court described "its action of striking the lurid details from [their]

19

submissions" as "*sanction* enough," *id.*at 235 (emphasis added). The court further admonished that "all counsel are subject to Rule 11's mandate that all submissions be presented for a proper purpose and factual contentions have evidentiary support," *id.*—a mandate they have again ignored in this case.

After making her allegations against Dershowitz public and gravely damaging his reputation, Giuffre has fought to keep the dubious "evidence" supporting her allegations secret. Without even pretending to offer any conceivable reason it is relevant, Giuffre has provided this Court with a self-serving summary of ██████████████████████████████ ██████ Appellee Br. at 17-18. But her purported confidence in the strength of her claims is belied by her frenzied aversion to allowing this information to become public.[5] A straightforward examination of her "proof" shows why that is.



But, as her counsel conceded under oath, Dershowitz's name does not appear in the Palm Beach Police Department Report. J.A.-390. ████████████████████████████████

_____

[5] While Giuffre claims that "Dershowitz does not seek to disturb the protective order shielding" her purported evidence, Appellee Br. at 18, it is in fact Giuffre who is responsible for the undeniably overinclusive sealing practices in the district court. Indeed, Dershowitz sought and obtained an order from the district court allowing *more* of this information to be made public, after Giuffre filed publicly available information under seal. *See* Dist. Ct. ECF Nos. 444, 461.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ Dershowitz was *never present* at Epstein's Palm Beach home during the time Giuffre was associated with Epstein. J.A.-1337-38 ¶ 9.

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ The patently absurd assertion that ████

████████████████████████████████████████████████

████████████████████████████████ exemplifies the recklessness with which she has made life-destroying accusations.  More important, in sworn testimony, Giuffre's counsel acknowledged that Dershowitz's name *never appeared on a flight log with Giuffre's*, nor on *any* flight logs during the entire period when Giuffre was associated with Epstein.  J.A.-1339 ¶ 15; J.A.-394.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

21

[REDACTED] More to the point, Tatiana Kovylina, the woman who flew on Mr. Epstein's plane with Dershowitz and several other people in 2005, was 24 years old at the time of the flight and working for a company with which Epstein was associated. J.A.-398-99. [REDACTED]

[REDACTED] Of course, adverse inferences can only be drawn against a party who either invokes the Fifth Amendment in a civil case him or herself, or controls a witness who does so. *See LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997). Dershowitz has never refused to answer questions about the allegations against him—he has repeatedly denied them outright, under oath—and he has never exercised any control over Epstein or any of his associates who invoked their Fifth Amendment privilege. J.A.-1346 ¶ 28. More importantly, Sarah Kellen, Adriana Mucinska, and Nadia Marcinkova all asserted their Fifth Amendment privileges when answering *every single question posed to them* in their depositions, not solely in response to questions about Dershowitz. J.A.-1346

¶ 29; *see, e.g.*, J.A.-408-09.  Presumably, they did so because witnesses risk

waving their Fifth Amendment privilege by invoking it only selectively.

███████████████████████████████████████████

███████████████████████████████████████████

████████  J.A.-1347 ¶ 31.

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████  In fact, Alessi has stated in an affidavit that he never saw

Giuffre at Epstein's house while Dershowitz was there.  J.A.-1349 ¶ 37;

J.A.-405 ¶ 19.  Indeed, in his affidavit, Alessi states that he "never saw Mr.

Dershowitz do anything improper or be present while anyone else was being

improper."  J.A.-404 ¶ 14.  He also confirms that Giuffre's lawyers failed to

interview him as part of their supposed "investigation" into Giuffre's claims, and

consequently grossly misrepresented the statements he made in his deposition.

J.A.-1349 ¶ 38; J.A.-405 ¶¶ 20-21.

Giuffre's reliance on the testimony of Alfredo Rodriguez is equally

flawed.  Rodriguez was clear that he did not know whether Dershowitz ever

received a massage at Epstein's house, and did not know if Dershowitz was aware that there were young girls present in the house. J.A.-1351-52 ¶ 42; J.A.-428-29. Rodriguez has never inculpated Dershowitz, and his testimony has no bearing on Giuffre's allegations as it concerned a period of time years after Giuffre left Epstein's orbit. J.A.-1352 ¶ 43.

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████—an assertion with no basis in reality. During his representation of Jeffrey Epstein, Dershowitz was part of a legal team that collectively decided how Epstein should interact with law enforcement. J.A.-1353 ¶ 46. He and other lawyers communicated with the Palm Beach State Attorney's Office—including scheduling meetings to depose Epstein—at the behest of their client. *Id.* The suggestion that a lawyer's involvement in rescheduling meetings on behalf of a client supports an inference that the lawyer was a participant in the client's criminal conduct is absurd.

These distortions represent just a few examples of Giuffre's utter lack of credibility.[6] *See generally* J.A-1334-60. Not content to rest on her own lies,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[6] While space limitations preclude a full refutation of Giuffre's false and irrelevant allegations about Dershowitz's visits to Epstein's home, it suffices to say that Giuffre grossly distorts Dershowitz's statements about his family's presence with him and about massages.





Alan Dershowitz is innocent, and his accusers are lying. The district court's sealing orders allow Giuffre's allegations against him to remain public, while documents that are no more "private" than what she has already told the world remain hidden from view. That is fundamentally unfair, and counter to the constitutional and common-law tradition of openness in American courts.[7]

For three years, Dershowitz's character and career have been cast in shadow by Giuffre's false allegations against him. Given the full treatment already afforded ████████████████████████████ before the district court,

---

[7] Giuffre's brief concludes with a puzzling statement that she "is not opposed to general unsealing of the *entire* factual record in the district court," Appellee Br. at 62—a position she has never previously taken. It is unclear what Giuffre means by "the entire factual record"—*i.e.*, whether she is referring to all documents exchanged in discovery, all documents filed with the district court, or some other universe of materials. As a matter of principle, Dershowitz supports maximum transparency, including the unsealing of all judicial documents in this case. But appellate courts do not enjoy "a general roving commission to supervise the administration of justice in the federal district courts," *La Buy v. Howes Leather Co.*, 352 U.S. 249, 267 (1957) (Brennan, J., dissenting) (internal quotation marks omitted), and the unsealing of other records that were *not* the subject of motions to unseal below is simply not before this Court. If Giuffre seeks to unseal additional records that are not at issue in this appeal, the proper course is for her to seek that relief before the district court, after which she can appeal any adverse rulings. Other interested parties would of course should have an opportunity to be heard, and the district court should be permitted to assess the particular documents at issue in the first instance.

26

the continuing harm that Dershowitz suffers as a result of Giuffre's false

allegations, and Dershowitz's advancing age, Dershowitz asks that this Court order

the *immediate* release of ███████████████████████████████ without

remanding for further consideration.  This Court employed a similar approach in

*United States v. Erie County*, 763 F.3d 235 (2d Cir. 2014), reversing a sealing

order and releasing the documents where the proponent of sealing had nothing

additional to offer on remand beyond what the district court previously considered.

*Id.* at 243.  Such is the case here, given Giuffre's extensive presentation to the

district court attempting to justify continued sealing of these documents.  *See* Dist.

Ct. ECF Nos. 406, 407.[8]

---

[8] Inasmuch as this Court determines that the remainder of the Summary Judgment must be
reassessed under the proper standard, that process should take place on remand to the district
court.

27

# CONCLUSION

Dershowitz respectfully requests that the Court reverse the district court's orders.

Dated:  December 27, 2017
     New York, New York

          EMERY CELLI BRINCKERHOFF
          & ABADY LLP

          _____/s/_____
          Andrew G. Celli, Jr.
          David A. Lebowitz

          600 Fifth Avenue, 10th Floor
          New York, New York 10020
          (212) 763-5000

          *Attorneys for Appellant*
          *Alan M. Dershowitz*

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B). It contains 6,977 words, excluding the parts of the brief exempted

by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6). It has been

prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in

<u>14-Point Times New Roman</u>.

Dated:  December 27, 2017